DOUGLAS C. EMHOFF (SBN 151049)
demhoff@venable.com
JENNIFER LEVIN
jlevin@venable.com
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

MICHAEL SCHATZOW (Admitted *Pro Hac Vice*)
mschatzow@venable.com
RICHARD L. WASSERMAN (Admitted *Pro Hac Vice*)
rlwasserman@venable.com
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742

Attorneys for Plaintiff Keith F. Cooper,
in his capacity as Liquidating Trustee of
The TGA Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRIGEM AMERICA CORPORATION,<br><br>Debtor. | Case No.: 8:05-13972-TA<br><br>Chapter 11<br><br>Adv. No.: 8:07-01140-TA |
| KEITH F. COOPER, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF THE TGA LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>CREDIT SUISSE INTERNATIONAL; CREDIT SUISSE SECURITIES (EUROPE) LIMITED; CREDIT SUISSE (HONG KONG) LIMITED; CQS CONVERTIBLE AND QUALITATIVE STRATEGIES MASTER FUND LIMITED; STARK ASIA MASTER FUND LTD.; CENTAR INVESTMENTS (ASIA) LTD.,<br><br>Defendants. | **MOTION, NOTICE OF MOTION, AND MEMORANDUM IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT FOLLOWING STATEMENT OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date: September 23, 2010<br><br>Time: **2:00 p.m.**<br><br>Location: **Courtroom 5B**<br><br>*Assigned to the Honorable Theodor C. Albert* |

LA: 278132/84646-245177

KEITH F. COOPER'S NOTICE OF MOTION AND
MOTION TO ALTER OR AMEND JUDGMENT

# NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT FOLLOWING STATEMENT OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT on September 23, 2010 at 2:00 p.m., or as soon thereafter as counsel can be heard in Courtroom 5B of the United States District Court located at 411 West Fourth Street, Santa Ana, California, Plaintiff Keith F. Cooper, the Liquidating Trustee for the TGA Liquidating Trust, will move this Court to alter or amend, in part, the Court's Judgment Following Statement of Decision on Motions for Summary Judgment (the "Judgment"). Specifically, Plaintiff seeks, pursuant to Fed. R. Bankr. P. 9023, applying Fed. R. Civ. P. 59(e),[1] to alter or amend the Court's judgment entering the Court's Statement of Decision on Motions for Summary Judgment (the "Decision") that Defendants are entitled to summary judgment as to the Plaintiffs' claims concerning $2 million that the Debtor received from Comprehensive Computer Services, Inc. ("CCS") on the basis of certain factual errors in the Court's Decision. When those facts are corrected, there is no support the Court's ruling as a matter of law, and Defendants are not entitled to summary judgment on those claims.

In making this Motion to Alter or Amend, Plaintiff incorporates by reference his Motion for Partial Reconsideration, which the Court did not decide when, on July 17, 2010, it entered Judgment Following Statement of Decision of Motions for Summary Judgment (Dkt. 213). Plaintiff makes the same substantive arguments and seeks, on a post-judgment basis, the same relief that his Motion for Partial Reconsideration had sought on a pre-judgment basis. The motions are substantively identical apart from the pre- and post-judgment distinction and instances where Plaintiff addresses the applicable standard under Rule 59(e) and its application to the issues in this case.

Plaintiff's Motion to Alter and Amend will be based on this notice, the attached memorandum of points and authorities, the accompanying attachments of Documentary Evidence

---

[1] Nothing in the Court's Judgment or its Statement of Decision indicates that the Court entered findings of fact determined through an adjudicative fact-finding process, and Plaintiff assumes that to be the case. Nevertheless, in the event that the Court's Decision did adjudicate disputed facts, Plaintiff also brings this Motion under Fed. R. Bankr. P. 7052, applying Fed. R. Civ. P. 52.

i

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

and Deposition Testimony, an anticipated reply memorandum, the files and records of this case, and any argument counsel may make at the hearing on the motion. Attached is a certification by counsel of the material facts and circumstances surrounding the summary judgment motions, as required by Local Rule 9013-1(l).

Pursuant to Local Rules 9013-1(c)(2) and 9013-1(f), Defendants are hereby advised that your response is due no later than September 9, 2010.

Dated: July 28, 2010

VENABLE LLP
MICHAEL SCHATZOW
RICHARD L. WASSERMAN
DOUGLAS C. EMHOFF
JENNIFER LEVIN

By: /s/ Michael Schatzow
MICHAEL SCHATZOW
Attorneys for Plaintiff Keith F. Cooper, in his capacity as Liquidating Trustee of The TGA Liquidating Trust

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT FOLLOWING
STATEMENT OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Bankr. P. 9023, applying Fed. R. Civ. P. 59(e),[1] Plaintiff Keith F. Cooper, in his capacity as Liquidating Trustee of The TGA Liquidating Trust (the "Trustee"), submits the following Memorandum in Support of his Motion to Alter or Amend Judgment Following Statement of Decision on Motions for Summary Judgment. In submitting this Memorandum in Support of his Motion to Alter or Amend, Plaintiff incorporates by reference his Motion for Partial Reconsideration, which the Court did not decide when, on July 17, 2010, it entered Judgment Following Statement of Decision of Motions for Summary Judgment. Plaintiff makes the same substantive arguments and seeks, on a post-judgment basis, the same relief that his Motion for Partial Reconsideration had sought on a pre-judgment basis. The motions are substantively identical apart from the pre- and post-judgment distinction.

## OVERVIEW

The Court has granted the motion of Defendants for summary judgment as to all claims by the Trustee except for the Trustee's claim to recover the $250,000 that Defendants do not dispute was paid by debtor TriGem America, Inc. ("TGA") with property of the debtor's estate without "earmarking" by TGA's parent, TriGem Computer, Inc. ("TGI"). (Dkt. 203, Statement of Decision on Motions for Summary Judgment) ("Decision" or "Dec."). On July 15, 2010, this Court entered judgment on the Decision. (Dkt. 212). In this Motion to Alter or Amend, the Trustee asks the Court to revisit one issue: the $2 million that TGA paid to Defendants after receiving a $3.3 million loan from Comprehensive Computer Services, Inc. ("CCS"). As indicated in that attached Certification by counsel filed pursuant to Local Rule 9013-1(l), the Trustee respectfully seeks reconsideration on this limited issue because key material facts relied upon by the Court in the Decision are incorrect, and the Trustee believes that, under the legal

---

[1] Nothing in the Court's Judgment or its Statement of Decision indicates that the Court entered findings of fact determined through an adjudicative fact-finding process, and Plaintiff assumes that to be the case. Nevertheless, in the event that the Court's Decision did adjudicate disputed facts, Plaintiff also brings this Motion under Fed. R. Bankr. P. 7052, applying Fed. R. Civ. P. 52.

rulings of the Court as set forth in the Decision, with the correct facts, the $2 million that TGA paid to Defendants should be recovered by the Trustee.

In finding in Defendants' favor as to the loan from CCS, the Court apparently concluded that the loan was subjected to the earmarking doctrine because it was controlled by TGI, was effectively a loan by TGI, and therefore should be treated as the equivalent of the $15.6 million that TGI transferred to TGA. Three key factual statements by the Court support that conclusion. *First*, on page 2 of the Decision, the Court states, "after TGA borrowed $2 million from Comprehensive Computer Services, Inc. ("CCS") *arranged by TGI*...." (Dec. at 3) (footnote omitted, emphasis added); see also id. at 8 (describing the loan of $2 million from CCS "*arranged by TGI*") (emphasis added). *Next*, the Court stated that "this transaction was essentially *a delayed payment owed by CCS to TGI*[.]" Id. at 3-4 (emphasis added). *Finally*, the Court stated that the "CCS borrowing was repaid to TGA *by TGI* on April 26, 2005, and likewise TGA recorded this as collection of part of its "due from parent" account receivable." Id. at 4 (emphasis added).

As shown below and by the evidence of record, none of these factual statements is correct. No evidence indicates that the loan from CCS was arranged by TGI; indeed, all evidence of record indicates that it was arranged by TGA. Similarly, the transfer was not essentially a delayed payment owed by CCS to TGI; the evidence of record shows that the loan was in fact later repaid by TGA to CCS. Finally, the evidence does not show that the CCS borrowing was "repaid to TGA by TGI on April 26, 2005," rather, the evidence shows that TGA repaid CCS with its own funds to CCS on two separate occasions, first on April 11, 2005, before TGI's payment to TGA, and then on May 13, 2005, seventeen days after the fact.

As TGI did not arrange for this loan, control this loan, or participate in this loan, the Court's finding of earmarking by TGI is clearly erroneous, even under the Court's legal ruling regarding the scope of the earmarking doctrine.[2] As the Court stated in its Decision, the elements

---

[2] The Trustee does not agree with the Court's Decision regarding the scope, purpose, and effect of the earmarking doctrine, and intends to appeal those rulings as applied to the facts of this case. By not questioning them in this Motion for Partial Reconsideration, the Trustee reserves all rights

2

LA: 278132/84646-245177

KEITH F. COOPER'S MEMORANDUM IN SUPPORT OF
MOTION TO ALTER OR AMEND JUDGMENT

of earmarking recognized by the Ninth Circuit require an agreement with the *lender* to use the loan proceeds for a particular purpose. See Aalfs v. Wirum (In re Straightline Invmts., Inc.), 525 F.3d 870, 881 (9th Cir. 2008) ("the earmarking doctrine requires: '(1) the existence of an agreement between the *new lender* and the debtor that the new funds will be used to pay a specified antecedent debt'") (emphasis added) (quoting Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.), 223 F.3d 1004, 1008 (9th Cir. 2000)). In other words, Defendants must show evidence of control or an agreement by *CCS*, not TGI, as to the use of the loan proceeds, yet no such evidence was presented by Defendants, no argument was made to that effect, and no findings were requested. Accordingly, under the correct facts and the Ninth Circuit law applied by the Court, the CCS loan was not earmarked for any purpose. As such, use of the funds was not restricted, and the funds were entirely subject to the control of TGA, and the Court's finding to the contrary is clearly erroneous. Accordingly, it is requested that the Court alter or amend its ruling to the contrary and award the $2 million payment to the Trustee. Alternatively, and at a minimum, the Court's finding that the undisputed facts show that the CCS loan was subject to TGI's control is clearly erroneous and neither party is entitled to summary judgment.

    In either case, the facts cited by the Trustee disprove the Court's finding that all material facts show control of the CCS loan by TGI. As the Court's findings are clearly erroneous, and as the judgment ordered by the Court bestows a $2 million windfall on Defendants, the Court should alter or amend the judgment. It would be a manifest injustice if summary judgment were to be granted to extend earmarking, an equitable doctrine, to apply to a loan as to which substantial evidence shows that the loan that was obtained, controlled, and paid for by the debtor and not a third party.

---

to raise those issues on appeal and does not waive any of its disputes of fact and law as to the Court's Decision.

3

LA: 278132/84646-245177

KEITH F. COOPER'S MEMORANDUM IN SUPPORT OF
MOTION TO ALTER OR AMEND JUDGMENT

# ARGUMENT

## I. Standard of Review for a Motion to Alter or Amend.

Under Fed R. Civ. P. 59(e), applicable pursuant to Fed. R. Bankr. P. 9023, a court may alter or amend its judgment when it "is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). In Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001), the Ninth Circuit clarified that "[a]mendment or alteration is appropriate under Rule 59(e) if ... (2) the district court committed clear error or made an initial decision that was manifestly unjust[.]" Accord Duarte v. Bardales, 526 F.3d 563, 567 (9th Cir.2008) (affirming "clearly erroneous" or manifest injustice" tests). Under this standard, the Court "may abuse its discretion" in denying a Rule 59(e) motion "if it rests its decision on a clearly erroneous finding of a material fact." Hwang v. M/V Alaskan Hero, No. 90-35831, 988 F.2d 119 (table), 1993 WL 68932, at *1 (9th Cir. Mar. 11, 1993). The "clear error" and "manifest injustice" tests apply in the absence of newly discovered evidence or an intervening change in controlling law.

In considering a motion to alter or amend, the court should consider whether the motion seeks to regurgitate the same arguments raised before or presents new arguments that should have been raised previously but were not, both of which are disfavored. Here, the Trustee's motion does not just recycle old arguments or belatedly present an argument that should have been made previously. In its initial summary judgment papers, the Trustee presented evidence sufficient to show that TGA, not TGI, controlled the loan from CCS. See Dkt. 141, Mem. in Supp. of Pl. Mot. for Partial Sum. J., at 4, 5, 14-15, 42, 44; Dkt. 142, Pl. Statement of Undisputed Facts in Supp. of Mot. for Partial Sum. J., at 17; Dkt. 159, Pl. Opp. to Defs. Mot. for Sum. J., at 17, 22, 28, 32-36; Dkt. 160, Pl. Statement of Gen. Items in Dispute in Supp. of Opp. to Defs. Mot. for Sum. J., at 30, 32, 33, 36-37; Dkt. 165, Pl. Reply in Supp. of Mot. for Partial Sum. J., at 2, 18-20. The Court did not address that evidence and instead, as discussed below, drew erroneous conclusions from other evidence. This motion properly points out the clear error in those conclusions and presents additional evidence confirming this clear error and the manifest

injustice resulting from this application of the earmarking doctrine. Rule 59(e) warrants relief under these circumstances.

### II. The Court's Factual Findings Regarding the CCS Loan Are Clearly Erroneous.

The Court's ruling that the CCS loan proceeds are subject to the earmarking doctrine rests upon several clearly erroneous factual conclusions. Both the factual record presented by the Trustee in response to Defendants' summary judgment motion, and additional evidence material to the issues raised by the Court, demonstrate that TGI was not involved in orchestrating, funding, or otherwise controlling the CCS loan to TGA, the factual predicates for the Court's ruling that the loan was "earmarked" by TGI. At a minimum, these facts suffice to show a genuine dispute of a material fact as to this issue. The Court's finding to the contrary is clearly erroneous.

**A.    The CCS loan was not arranged by TGI.** The Court's statement in its Decision that the CCS loan "was arranged by TGI" (Dec. at 3-4) is contrary to all evidence in the record (and all facts known to the Trustee). All of the evidence on the subject shows that the loan was arranged by TGA. Brian Yoon, TGA's CEO, testified that it was his idea. In response to questions from Defendants' counsel about what would happen if TGI did not pay the full $17.85 million that would be required under the Confirmation Agreements, Mr. Yoon testified that Bryan Lee, TGA's CFO, sent an e-mail on March 23, 2005 and had conversations with him to discuss "potential sources of money" to fund the initial exchange amount if TGI's payment was not sufficient. See Declaration of Michael Schatzow Exhibit 1 ("Ex. 1"), Yoon Dep. 57:10-58:20 (in record as Pl. Sum. J. Ex. ["PX"] 1). Indeed, Mr. Yoon further testified that he then had conversations with Mr. Lee as to what to do if TGA did not receive the full $17.85 million from TGI, and that he (Mr. Yoon) suggested that TGA borrow the money from CCS: "So we discussed that *and I recommend how about some borrow the money from the CCS* if they have." (Ex. 1, Yoon Dep. 59:17-18) (emphasis added). From the correspondence, it appears that Lee had not even informed TGI of the CCS loan until *after* CCS had already wired $2.0 million to TGA. See Schatzow Decl. Ex. 2 at 4, March 23, 2005 e-mail from B. Lee to TGI's Ki-hong Park informing

him of events and receipt of funds from CCS prior to deadline for wiring initial exchange amount to Defendants) (in record as part of Defs. Sum. J. Ex. ["DX"] AAA).

Mr. Lee, the only other TGA employee with direct knowledge of the events regarding the loan from CCS, did not have a clear recollection, but his testimony provides no support for the notion that the CCS loan was arranged by TGI. Instead, he believed that either he or Mr. Yoon had made the arrangements with CCS:

> Q: Were you the one who asked, requested that CCS provide that money [$2 million] to TGA?
>
> A: I don't have a clear recollection whether under - - whether I requested it under Mr. Yoon's instruction or whether Mr. Yoon personally instructed."

(Schatzow Decl. Ex. 3, B. Lee Dep. 35:6-11 (PX 2)). There is no other evidence on this subject. Accordingly, the Court's finding that the CCS loan was arranged by TGI is clearly erroneous.

**B.    The CCS loan was not a delayed payment owed by CCS to TGI.** The Court's statement that that "this transaction was essentially *a delayed payment owed by CCS to TGI*" (Dec. at 3-4) (emphasis added) also is clearly erroneous. Apparently, the sole basis for the Court's assertion is a one-sentence parenthetical in the above March 23, 2005 e-mail from Mr. Lee to Ki-hong Park of TGI in which Mr. Lee reports that CCS would use funds for the loan by diverting funds that otherwise would have been remitted to TGI to pay a debt owed to TGI and, according to Defendants, that CCS would remit the funds owed to TGI in two or three business days later. This is hardly a statement that the payment was made by CCS in part satisfaction of its debt to TGI. Indeed, the e-mail itself is wholly innocuous. Lee explains that, because of the uncertainty of timely receiving the full $17.85 million from TGI, "funds were secured by borrowing temporarily from CCS," and adds the following parenthetical: "(Accordingly the DA Payment CCS was going to send TGI today will be remitted either this week Friday or next week Monday.)" (Schatzow Decl. Ex. 2 at 4 (DX AAA)).

No evidence in the case supports the Court's interpretation of this parenthetical. Neither Lee nor anyone else was questioned about what the parenthetical meant. The parenthetical refers to a "DA Payment" by CCS to TGI, and no evidence indicates what the "DA Payment" was, why CCS was going to send it to TGI, and how much money it was. Even if the parenthetical could

6

fairly be read to imply that the source of the CCS loan was money that would otherwise have been paid earlier to TGI, it is clear that (1) TGI played no role in arranging this as it is TGI who is being informed of the fact by TGA; and (2) the loan was not intended to satisfy any obligation owed by CCS to TGI, nor to substitute for CCS's planned payment to TGI, as the parenthetical explicitly states that CCS would make the payment to TGI shortly after the loan to TGA, either in two business days, or in three business days. No other evidence on this subject exists. Thus, the Court's finding is clearly erroneous.

        **C.**      **TGI did not repay TGA for the CCS loan.** The Court's statements that "CCS borrowing was repaid to TGA by TGI on April 26, 2005, and likewise TGA recorded this as collection of part of its "due from parent" account receivable" (Dec. at 4) also are clearly erroneous. No evidence, temporal or otherwise, links the $2 million paid by TGI to TGA on April 26, 2005, to TGA's repayment of the CCS loan in two installments, on April 15 and May 13, 2005.

*First*, the amount of the CCS loan was $3.3 million, not $2 million, made in two installments, $2.0 million on March 23 and $1.3 million on March 24. See Schatzow Decl. Ex. 4, a March 23, 2005 e-mail from Mr. Lee to TGA's Susan Park (setting forth TGA's plans "to repay CCS the $3.3M (we) borrowed by mid-April) and diagramming a $3.3M loan from CCS) (DX ZZ); Schatzow Decl. Ex. 5, TGA's general ledger entries (DX DDD), Ex. 3, B. Lee Dep. 120:16-122:10 (confirming that general ledger entries reflect deposits of $3.3 million from CCS into TGA's account). The fact that the CCS loan was for $3.3 million, not $2 million, weighs against the Court's findings that TGI arranged for and paid back the CCS loan.

*Second*, although the Court correctly notes that the $2 million paid by TGI on April 26, 2005 was applied by TGA to reduce the same APA receivable that the $15.6 million was applied to, no evidence links that $2 million to repaying the CCS loan. If anything, the evidence is contrary to the Court's finding that this was for repayment of the CCS loan. Mr. Yoon, for instance, testified that TGI did *not* give money to TGA to repay CCS.

Q:    Did TGA pay the money back to CCS at some point after March 24, 2005?

A:    We pay back some money to CCS. TGA paid back.

Q: Did TGI provide the funds to TGA for purposes of paying back the money to CCS?

A: I don't think so, no.

(Schatzow Decl. Ex. 1, Yoon Dep. 60:8-14).

*Third*, the timing of TGI's April 26 $2 million payment to TGA does not support the Court's assumption that the payment was made to repay the CCS loan. The first repayment by TGA occurred on April 15, 2005, some eleven days *before* the April 26 payment by TGI. This payment, in the amount of $1 million, was described by Susan Park, and approved by Bryan Lee, for the purpose of "Pay back fund borrowed on 3/24/05[.]" (Schatzow Decl. Ex. 6, B. Lee Dep. Ex. 42, at Bates No. T00000374_0004; Schatzow Decl. Ex. 3, B. Lee Dep. 122:19-123:8). The balance of the CCS loan, $2.3 million, which of course exceeds the $2 million payment from TGI, was not paid immediately following receipt of the $2 million by TGA from TGI and indeed was not paid until seventeen days *later*, on May 13, 2005, by wire transfer from TGA to CCS, for the purpose, stated by Susan Park and approved by Bryan Lee, of "Reim[bursement] of the balance 3.3 M borrowing in March05 [sic]." (Schatzow Decl. Ex. 6 at T00000374_0002); see also Schatzow Decl. Ex. 3, B. Lee Dep. 123:11-25.

Thus, the $2 million portion of the $3.3 million CCS loan used to make payment to the Defendants was not arranged by TGI, nor was the loan in place of a payment owed by CCS to TGI, nor was the CCS borrowing repaid to TGA by TGI on April 26. The Court's findings regarding the CCS loan are clearly erroneous.

### III. The Correct Facts Do Not Show Earmarking of the CCS Loan.

Whether the earmarking analysis requires an "agreement" (the Trustee's position) or "control" (Defendants' position) directing disposition of loan proceeds, the law is clear that control by or an agreement with the new *lender* is required. As the Court stated in the Decision, the Ninth Circuit has set forth the following elements of the earmarking test:

> "[T]he earmarking doctrine requires: '(1) the existence of an agreement between the ***new lender*** and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; (3) the transaction viewed as a whole ... does not result in any diminution of the estate.'"

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

8

(Dec. at 12) (quoting Aalfs v. Wirum (In re Straightline Invmts., Inc.), 525 F.3d 870, 881 (9th Cir. 2008) (in turn quoting Adams v. Anderson (In re Superior Stamp & Coin Co., Inc.), 223 F.3d 1004, 1008 (9th Cir. 2000)) (quoting McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd.), 859 F.2d 561, 567 (8th Cir.1988)) (emphasis added). As the Court also stated in its Decision, "'[t]he earmarking doctrine applies "when a third party lends money to a debtor for the specific purpose of paying a specified creditor."'" (Dec. at 11) (quoting In re Superior Stamp & Coin Co., 223 F.3d at 1008 (quoting Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.), 16 F.3d 313, 316 (9th Cir. 1994))). These cases all refer to control by the lender, not some additional third party.

Defendants have never suggested that CCS earmarked its loan proceeds. Rather, they argued, as the Court found, that the CCS loan was earmarked by TGI. As demonstrated above, the facts do not support this contention. Indeed, they show the direct opposite: TGI was not involved in obtaining, controlling, or paying off the CCS loan. Thus, the Court's conclusion is clearly erroneous, and the Court should have granted summary judgment to the Trustee on this issue. At a minimum, the Court's finding that no genuine dispute exists as to the material facts is clearly erroneous.

In any event, the law does not allow a third party to "earmark" unilaterally the proceeds of a loan made by another. To be sure, if the Court were to apply a pure "but-for" causation test, such that any payment to a debtor is deemed to be earmarked if the debtor would not have received it had it not intended to use the funds to pay a specified third party, then these corrected facts might not require a different result. But the Ninth Circuit has never suggested that the earmarking doctrine could be extended to such lengths, and, as the above elements of earmarking identified by the Ninth Circuit indicate, the doctrine cannot be so stretched to eliminate a broad category of preferential payments and fraudulent transfers. Under the Ninth Circuit standards, the correct facts demonstrate that the CCS loan was not earmarked. The Court's ruling therefore is clearly erroneous on the facts. It also results in a manifest injustice: the equitable earmarking doctrine would be applied to prevent the Trustee from recovering the debtor's payoff of a loan procured, obtained, and controlled by the debtor. Again, if the Court determines that its "but-for"

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

test requires this result as a matter of law, then it should so clarify its ruling to make clear that the issue here is legal and not factual.

## CONCLUSION

For the foregoing reasons, the Court should alter or amend its Judgment Following Statement of Decision on Motions for Summary Judgment as to Plaintiffs' claims to recover $2 million of the funds that TGA transferred to Defendants and either grant partial summary judgment in favor of the Trustee on Counts V, VI, VII, VIII, and XI as to those funds, or set that issue for trial to resolve any genuine disputes of material fact as to those funds.

Dated: July 28, 2010

VENABLE LLP
MICHAEL SCHATZOW
RICHARD L. WASSERMAN
DOUGLAS C. EMHOFF
JENNIFER LEVIN

By:  /s/ Michael Schatzow
Attorneys for Plaintiff Keith F. Cooper, in his capacity as Liquidating Trustee of The TGA Liquidating Trust

Case 8:07-ap-01140-TA    Doc 216    Filed 07/28/10    Entered 07/28/10 16:10:20    Desc
Main Document    Page 14 of 15

| In re: In re TRIGEM AMERICA CORPORATION | | CHAPTER 11 |
|---|---|---|
| Cooper v. Credit Suisse International, et al | Debtor(s). | CASE NUMBER: 8:05-13972-TA<br>ADV. NUMBER: 8:07-01140-TA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document described **MOTION TO ALTER OR AMEND JUDGMENT FOLLOWING STATEMENT OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 28, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Jennifer Levin           jlevin@venable.com
- Delilah Vinzon           dvinzon@milbank.com
- Aluyah I. Imoisili       aimoisili@milbank.com
- United States Trustee (SA)   uspregion16.sa.ect@usdoj.gov
- Christopher T. Williams   ctwilliams@venable.com; jcontreras@venable.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On July 28, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/28/10 | Michele Baggett | /s/ Michele Baggett |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                F 9013-3.1

| In re: In re TRIGEM AMERICA CORPORATION | CHAPTER 11 |
|---|---|
| *Cooper v. Credit Suisse International, et al* | CASE NUMBER:  8:05-13972-TA<br>ADV. NUMBER:  8:07-01140-TA |
| Debtor(s). | |

# OVERNIGHT MAIL

Lindsee P. Granfield, Esq.
Lisa M. Schweitzer, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON
One Liberty Plaza
New York, NY  10006

Jerry L. Marks, Esq.
Fred Neufeld, Esq.
MILBANK TWEED HADLEY & McCLOY
601 South Figueroa 30th Floor
Los Angeles, CA  90017-5735

Judge Theodor C. Albert
United States Bankruptcy Court
411 W. Fourth Street
Santa Ana, CA  92701

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1