DOUGLAS C. EMHOFF (SBN 151049)
demhoff@venable.com
JENNIFER LEVIN        (SBN 252420)
jylevin@venable.com
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

MICHAEL SCHATZOW  (Admitted *Pro Hac Vice*)
mschatzow@venable.com
RICHARD L. WASSERMAN  (Admitted *Pro Hac Vice*)
rlwasserman@venable.com
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742

Attorneys for Plaintiff Keith F. Cooper,
in his capacity as Liquidating Trustee of
The TGA Liquidating Trust

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

UNITED STATES BANKRUPTCY COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>TRIGEM AMERICA CORPORATION,<br><br>                                    Debtor. | Case No.: 8:05-13972-TA<br><br>Chapter 11<br><br>Adv. No.: 8:07-01140-TA |
| KEITH F. COOPER, IN HIS CAPACITY AS LIQUIDATING TRUSTEE OF THE TGA LIQUIDATING TRUST<br><br>                                    Plaintiff,<br><br>        v.<br><br>CREDIT SUISSE INTERNATIONAL; CREDIT SUISSE SECURITIES (EUROPE) LIMITED; CREDIT SUISSE (HONG KONG) LIMITED; CQS CONVERTIBLE AND QUALITATIVE STRATEGIES MASTER FUND LIMITED; STARK ASIA MASTER FUND LTD.; CENTAR INVESTMENTS (ASIA) LTD.<br><br>                                    Defendants. | **DECLARATION OF MICHAEL SCHATZOW IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT FOLLOWING STATEMENT OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>HEARING ON MOTION TO AMEND JUDGMENT:<br>    Date:  September 23, 2010<br>    Time:  2:00 p.m.<br>    Courtroom:  5B<br><br>*Assigned for all purposes to the Honorable Theodor C. Albert* |

1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1

2

I, Michael Schatzow, declare as follows:

3

1.    I am an attorney licensed to practice law in the District of Columbia, the State of

4

Maryland, and the State of New York, as well as in the Supreme Court of the United States and a

5

number of federal courts of appeal and district courts.    I have been admitted to practice in the

6

United States Bankruptcy Court for the Central District of California *pro hac vice*.    I am an

7

attorney at Venable LLP, counsel for plaintiff Keith F. Cooper as Liquidating Trustee.    I submit

8

this declaration in support of Keith F. Cooper's Motion for Partial Reconsideration.    I have

9

personal knowledge of the facts stated herein or am informed and believe them to be true and, if

10

called as a witness, I could and would testify competently thereto.

11

2.    Attached as Exhibit 1 to this Declaration is a true and correct copy of part of the

12

transcript from the deposition of Brian Yoon, dated January 20, 2009, in the record as Pl. Sum. J.

13

Ex. ["PX"] 1.

14

3.    Attached as Exhibit 2 to this Declaration is a true and correct copy of a March 23,

15

2005 e-mail from B. Lee to TGI's Ki-hong Park, in record as part of Defs. Sum. J. Ex. ["DX"]

16

AAA.

17

4.    Attached as Exhibit 3 to this Declaration is a true and correct copy of part of the

18

transcript from the deposition of Bryan Lee, dated January 22, 2009, in this record as part of PX

19

2.

20

5.    Attached as Exhibit 4 to this Declaration is a true and correct copy of a March 23,

21

2005 e-mail from Bryan Lee to Susan Park, in this record as DX ZZ.

22

6.    Attached as Exhibit 5 to this Declaration is a true and correct copy of a page from

23

the TGA general ledger, reflecting general ledger entries on March 23 and March 24, 2005, in

24

this record as DX DDD.

25

7.    Attached as Exhibit 6 to this Declaration is a true and correct copy of wire transfer

26

applications and instructions, and related payment requests, constituting Exhibit 42 of the Bryan

27

Lee deposition, bates numbers T00000374-T00000374_0004.

28

2

DECLARATION OF MICHAEL SCHATZOW IN SUPPORT OF
MOTION FOR PARTIAL RECONSIDERATION

1

2          I declare under penalty of perjury under the laws of the United States of America that the

3    foregoing is true and correct.  Executed on July 28, 2010, at Baltimore, Maryland.

4

5                                          /s/   *Michael Schatzow*

6                                          Michael Schatzow

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

3

# EXHIBIT 1

Page 1

```
 1
 2                UNITED STATES BANKRUPTCY COURT
 3                CENTRAL DISTRICT OF CALIFORNIA
 4
     ------------------------------x
 5   In re:                        )
                                   )
 6   TRIGEM AMERICA CORPORATION,   )
                                   )
 7             Debtor.             )
                                   )
 8   KEITH F. COOPER, in his       )
     capacity as Liquidating       )
 9   Trustee of the TGA            )
     Liquidating Trust,            )
10                                 )
               Plaintiff,          )
11                                 )
          vs.                      ) Case No.: BK. No. 8:05-13972-TA
12                                 )
     CREDIT SUISSE INTERNATIONAL,  ) Chapter 11
13   etc.,                         )
                                   )
14             Defendants.         ) Adv. Proc. No.:8-07-01140-TA
     ------------------------------x
15
16
17
18          VIDEOTAPED DEPOSITION OF BRIAN YOON
19                Los Angeles, California
20                Tuesday, January 20, 2009
21
22
23   Reported by:
24   SUSAN A. SULLIVAN, CSR #3522, RPR, CRR
25   JOB NO. 20477
```

EXHIBIT 1
Page 4

| Page 2 |
|---|
| 1 |
| 2    January 20, 2009 |
| 3        9:34 a.m. |
| 4 |
| 5    VIDEOTAPED DEPOSITION of BRIAN YOON, taken |
| 6    by Defendants, at the offices of Milbank, |
| 7    Tweed, Hadley & McCloy, 601 South Figueroa |
| 8    Street, Los Angeles, California, before |
| 9    Susan A.  Sullivan, CSR, RPR, CRR, State of |
| 10    California. |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |

| Page 3 |
|---|
| 1 |
| 2        A P P E A R A N C E S : |
| 3 |
| 4    VENABLE LLP |
| 5        Attorneys for the Plaintiff |
| 6        750 E. Pratt Street, Suite 900 |
| 7        Baltimore, Maryland 21202 |
| 8    BY:  MICHAEL SCHATZOW |
| 9 |
| 10    VENABLE LLP |
| 11        Attorneys for the Plaintiff |
| 12        2049 Century Park East, East 2100 |
| 13        Los Angeles, California 90067 |
| 14    BY:  DOUGLAS C. EMHOFF, ESQ. |
| 15 |
| 16    LEVENE, NEALE, BENDER, RANKIN & BRILL LLP |
| 17        Attorneys for the Plaintiff |
| 18        10250 Constellation Boulevard, Suite 1700 |
| 19        Los Angeles, California 90067 |
| 20    BY:  BETH ANN R. YOUNG, ESQ. |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |

| Page 4 |
|---|
| 1 |
| 2    A P P E A R A N C E S (Continued): |
| 3 |
| 4    MILBANK, TWEED, HADLEY & McCLOY LLP |
| 5        Attorneys for the Defendants |
| 6        601 South Figueroa Street |
| 7        Los Angeles, California 90017 |
| 8    BY:  JERRY L. MARKS, ESQ. |
| 9        DELILAH VINZON, ESQ. |
| 10 |
| 11    ALSO PRESENT: |
| 12        SAMUEL S. OH, ESQ. |
| 13 |
| 14    VIDEOGRAPHER: |
| 15        MATTHEW SMITH |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |

| Page 5 |
|---|
| 1            BRIAN YOON |
| 2        THE VIDEOGRAPHER:  This begins tape labeled |
| 3    Number 1 videotaped deposition of Brian Yoon In |
| 4    Re: TriGem America corporation and Keith F. |
| 5    Cooper, et al., v. Credit Suisse International, |
| 6    et al., in the United States Bankruptcy Court, |
| 7    Central District of California, Case No. |
| 8    8:07-01140-TA.  This deposition is being held at |
| 9    601 South Figueroa Street on the 31st floor in |
| 10    Los Angeles, California, on January 20th, 2009, |
| 11    at approximately 9:34 a.m. |
| 12        My name is Matthew Smith from TSG |
| 13    Reporting, Incorporated, and I am the legal |
| 14    video specialist.  The court reporter is Susan |
| 15    Sullivan in association with TSG Reporting. |
| 16        Will counsel please introduce yourselves |
| 17    for the record. |
| 18        MR. MARKS:  Jerry Marks, Milbank Tweed, for |
| 19    the defendants. |
| 20        MS. VINZON:  Delilah Vinzon, Milbank Tweed. |
| 21        MR. EMHOFF:  Douglas Emhoff and Michael |
| 22    Schatzow for Plaintiff. |
| 23        MS. YOUNG:  Beth Young on behalf of the |
| 24    plaintiff. |
| 25        MR. OH:  Sam Oh on behalf of the plaintiff |

Page 54

BRIAN YOON

1
2 payment?
3    Q   I never made any agreement with Mr. Park to
4 use this amount for the CSFB.
5    Q   Did you tell Mr. Park at any time that you
6 would be using this $15.6 million to pay any
7 creditors of TGA?
8    A   No.
9    Q   Did you tell Mr. Park that you intended to
10 use this $15.6 million for any other business
11 purposes?
12    A   No.
13    Q   Did you even consider as of March 24th,
14 2005, using this $15.6 million to pay anyone other
15 than the parties to the swap agreements?
16    A   I told you because at this highest
17 priority to pay CSFB in TriGem America sum, so I did
18 pay this amount to CSFB.
19    Q   And I'm asking you whether or not you even
20 considered using this $15.6 million that TGI sent for
21 any purpose other than paying the parties to the swap
22 agreements?
23    A   At the time I didn't think about that.
24    MR. MARKS:  I would like to mark as next in
25 line, for the record we have marked as Exhibit

Page 55

BRIAN YOON

1
2 11 a multi-page E-mail exchange between Mr. Lee
3 and Mr. Yoon and others from March 21, 2005,
4 through March 23, 2005, Bates range PL 00000187
5 through 189, as well as the original Korean
6 version of that E-mail, Bates Number PL00000230
7 to 232.
8    (Yoon Exhibit 11, a document bearing Bates
9 Nos. PL00000187 to PL00000189 and
10 PL00000230 to PL00000232, marked for
11 identification, as of this date.)
12    And, for the record, the translation
13 provided is the translation provided by
14 Plaintiff's counsel.
15    Q   Mr. Yoon, have you had an opportunity to
16 look at this E-mail?
17    A   Yes.
18    Q   And did you receive this E-mail from Mr.
19 Lee at TGI on March 23rd, 2005?
20    A   Yes.
21    Q   And I assume at that time that you read the
22 E-mail.
23    A   Yes.
24    Q   Is Mr. Lee informing you that the initial
25 exchange amount payment of 17.85 needed to be made by

Page 56

BRIAN YOON

1
2 March 24th, 2005?
3    A   Yes.
4    Q   And did you agree with Mr. Lee that that
5 payment would in fact be made by March 24th, 2005?
6    A   Yes.
7    Q   And did Mr. -- strike that.
8    In this communication is Mr. Lee also
9 providing you with the wire instructions for making
10 the initial exchange amount payments to the swap
11 parties?
12    A   Yes.
13    Q   If you look at Page 2 of Exhibit 11, it is
14 Bates Page 188, did Mr. Lee inform you on March -- on
15 or about March 23, 2005, that TGI would be wiring
16 $15.6 million for purposes of making the initial
17 exchange payment?
18    A   It is actually 188?
19    Q   Yes.
20    A   This E-mail sent by Mr. Park, not Mr. Lee.
21    Q   On or about March 23rd, 2004, as reflected
22 in this E-mail --
23    A   Uh-huh.
24    Q   -- did Mr. Park inform you --
25    A   Uh-huh.

Page 57

BRIAN YOON

1
2    Q   -- that TGI would be wiring $15.6 million
3 for purposes of funding the $17.85 million initial
4 exchange payment?
5    A   Yes.
6    (Yoon Exhibit 12, a document bearing Bates
7 Nos. PL00000190 to PL00000192 and
8 PL00000227 to PL00000229, marked for
9 identification, as of this date.)
10    MR. MARKS:  I'm marking as Exhibit 12 a
11 multi-page series of E-mails between Mr. Lee and
12 Mr. Yoon others on or about March 23rd, 2005,
13 Bates range PL000001 through 192, as well as the
14 original Korean version of those, PL00000227
15 through 229 and, for the record, the translation
16 is by Plaintiff's counsel.
17    Q   Have you had a chance to look at that
18 E-mail, Mr. Yoon?
19    A   Yes.
20    Q   Did you have this communication with Mr.
21 Lee on or about March 23rd, 2005?
22    A   Communication for what?
23    Q   Did you have this E-mail communication with
24 Mr. Lee on or about March 23rd, 2005?
25    A   Yes, I did.

Page 58

BRIAN YOON

1
2    Q   Was it your understanding at the time that
3  there was an additional amount above and beyond the
4  15.6 million that was required to make the initial
5  exchange amount payment?
6    A   Yes.
7    Q   And is this communication about possible
8  sources of that additional $2.25 million?
9        MR. SCHATZOW:  Objection.
10   A   Once more?
11   Q   Is this communication, at least in part,
12 about potential sources for the additional $2.25
13 million that was required to fund the initial
14 exchange amount?
15   A   What is original potential source?  What's
16 the meaning of potential source?
17   Q   Of money.  Potential source of money.
18   A   To match the 17.5 million?
19   Q   Yes.
20   A   Yes, we needed that.
21   Q   After reading the E-mail that I've marked
22 as Exhibit 12 on March 23rd, 2005, was it your
23 understanding that the 17.85 million must be provided
24 to the swap agreement parties no later than March 24,
25 2005?

Page 59

BRIAN YOON

1
2    A   Yes.
3    Q   And, in fact, Mr. Lee uses those words in
4  this E-mail, correct?
5    A   Yes.
6    Q   Did you have any discussions with Mr. Lee
7  on or about March 23rd, 2005, disputing anything that
8  he was saying in this E-mail?
9    A   Before he sent this E-mail to Susan Park,
10 he discussed this issue with me.
11   Q   What do you recall about your discussions?
12   A   We must pay 17.85 million but TGI paid only
13 15.6 million and Mr. Park said remaining two point
14 some million we pay soon, but it is very tight
15 schedule.  The worst case, we did not receive the
16 initial money from TGI for their AP to TGA at the
17 source.  So we discuss that and I recommend how about
18 some borrow the money from the CCS if they have.
19   Q   Did TGA in fact receive from CCS an
20 additional $2.25 million following this March 25,
21 E-mail exchange?
22   A   I don't know exactly the amount how much
23 amount do we borrow from CCS, but we borrow some
24 money from CCS.
25   Q   And was it your understanding at the time

Page 60

BRIAN YOON

1
2  that the money obtain from CCS was to be used to pay
3  the initial exchange amount payments?
4    A   Yes.
5    Q   And is that in fact what the money was used
6  for?
7    A   To pay CCS.
8    Q   Did TGA pay the money back to CCS at some
9  point after March 24, 2005?
10   A   We pay back some money to CCS.  TGA paid
11 back.
12   Q   Did TGI provide the funds to TGA for
13 purposes of paying back the money to CCS?
14   A   I don't think so, no.
15        (Yoon Exhibit 13, a document bearing Bates
16        Nos. TGA0630850 to TGA0630852, marked for
17        identification, as of this date.)
18        MR. MARKS:  I'm marking as Exhibit 13 a
19        U.S. Bank statement of TGA for the period March
20        1st, 2005, through March 31st, 2005, bearing the
21        Bates range TGA0630850 through 852.
22   Q   Mr. Yoon, is that a bank statement for TGA
23 for the period I just said?
24   A   Yes.
25   Q   I would like to direct your attention to

Page 61

BRIAN YOON

1
2  the second entry there under March 24th.  It says,
3  Wire, TriGem Computer, Inc., and it is for
4  $15,600,000.  Do you see that?
5    A   Yes.
6    Q   Is that the money that TGI wired to TGA on
7  March 24, 2005, for purposes of making the initial
8  exchange amount payments?
9    A   Yes, they pay off the, some part of their
10 AP to TGA.
11   Q   If you turn to the second page of Exhibit
12 13, do you see four wire transfers on March 24th,
13 2005?
14   A   March 24th?
15   Q   Yes.
16   A   Yes, I can see.
17   Q   Are those the wire transfers for -- wire
18 transfers of the money to the bondholders for the
19 initial exchange amount payments?
20   A   Yes.
21   Q   So is it correct on the same day you
22 received the money from TGA, TGA made the wire
23 transfer payments for the initial exchange payments?
24   A   Yes.
25   Q   If you look at Page 1 again of Exhibit 13,

EXHIBIT 1
Page 7

# EXHIBIT 2

Bondholders Details                                                              Page 1/3

Yoon, Bo-young (Brian Yoon/TGA)

From:        Bryan Lee [blee@trigem-usa.com]
Date Sent:   Wednesday, March 23, 2005 12:33 P.M.
To:          Park, Ki-hong
CC:          Yoon, Bo-young(Brian Yoon/TGI); Park, Han-soo
Subject:     RE: Bondholders Details

General Manger Park,

1.  When (you) send the below indicated TGA BOD Resolution prepared by the head office with the
    signatures of the Managing Director Park and the Chairman, I will get Managing Director Yoon's
    signature.

2.  When (you) send the original OTC Swap Agreement, it will be singed by TGA on March 24.

3.  TGA had to remit the Initial Exchange Amount $17,850K by March 24, US Time, of the above
    stated amount, the head office was going to remit $2.250K, Korea Time on March 24 (Thursday),
    it was uncertain whether the remittance will arrive in time and be available to TGA by our time
    (Wire ending time is 1:30), therefore funds were secured by borrowing temporarily from CCS.
    (Accordingly the DA Payment CCS was going to send TGI today will be remitted either this week
    Friday or next week Monday.) .

I've attached the organized chart of Wire Instruction received from Mark.
As for the remittance amount of each bank, I based this as 75% of the CB amount held by each company.
Please confirm the Bank Info and the remittance amount.

Thank you,

Bryan Lee

From: Park, Ki-hong
Sent: Monday, March 21, 2005 5:31 PM
To: Park, Han-soo
Cc: Yoon, Bo-young (Brian Yoon/TGI); Park, Han-soo
Subject: FW: Bondholders Details
Importance: High

----------Original Message----------
From: Van Cott, Mark [mailto:mark.vancott@csfb.com]
Sent: Wednesday, 2005-3-23 10:10 PM
To: Lee, Yang-woo (Alex Lee/TGI); Park, Ki-hong;'Brian Lee; TGA-Yoon, Bo-young
Cc: jhe@kimchanglee.co.kr; Ripley, Sean; 'song il an';
'lynn.wong@cqsm.com';'jcbanc@cqsm.com';alanxgao@bloomberg.net'
Subject: FW: Bondholders Details

General Manager Bryan,

The Mandatory Conversion of overseas CB 23,8Mil matter is scheduled to close this week, on March 23.
There's almost no margin for time and even a minor snag in schedule can cause the entire deal to drop so if
at all possible please respond in a tight manner.

The overall schedule is as follows.

# EXHIBIT 3

Page 1

```
 1
 2                UNITED STATES BANKRUPTCY COURT
 3                CENTRAL DISTRICT OF CALIFORNIA
 4
     ---------------------------x
 5   In re:                     )
                                )
 6   TRIGEM AMERICA CORPORATION,)
                                )
 7              Debtor.         )
                                )
 8   KEITH F. COOPER, in his    )
     capacity as Liquidating    )
 9   Trustee of the TGA         )
     Liquidating Trust,         )
10                              )
                Plaintiff,      )
11                              )
            vs.                 )Case No.: BK. No. 8:05-13972-TA
12                              )
     CREDIT SUISSE INTERNATIONAL,)Chapter 11
13   etc.,                      )
                                )
14              Defendants.     )Adv. Proc. No.:8-07-01140-TA
     ---------------------------x
15
16
17
18              DEPOSITION OF BRYAN LEE
19              Los Angeles, California
20              Thursday, January 22, 2009
21
22
23   Reported by:
24   SUSAN A. SULLIVAN, CSR #3522, RPR, CRR
25   JOB NO. 20478
```

502

EXHIBIT 3
Page 9

## Page 2

1
2        January 22, 2009
3            10:26 a.m.
4
5    VIDEOTAPED DEPOSITION of BRYAN LEE, taken
6    by Defendants, at the offices of Milbank,
7    Tweed, Hadley & McCloy, 601 South Figueroa
8    Street, Los Angeles, California, before
9    Susan A. Sullivan, CSR, RPR, CRR, State of
10   California.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

TSG Reporting – Worldwide    (877) 702-9580

## Page 3

1
2        A P P E A R A N C E S :
3
4    VENABLE LLP
5        Attorneys for the Plaintiff
6        750 E. Pratt Street, Suite 900
7        Baltimore, Maryland 21202
8    BY: MICHAEL SCHATZOW, ESQ.
9
10   VENABLE LLP
11       Attorneys for the Plaintiff
12       2049 Century Park East, East 2100
13       Los Angeles, California 90067
14   BY: JON-JAMISON HILL, ESQ.
15
16   LEVENE, NEALE, BENDER, RANKIN & BRILL LLP
17       Attorneys for the Plaintiff
18       10250 Constellation Boulevard, Suite 1700
19       Los Angeles, California 90067
20   BY: BETH ANN R. YOUNG, ESQ.
21
22
23
24
25

TSG Reporting – Worldwide    (877) 702-9580

## Page 4

1
2        A P P E A R A N C E S (Continued):
3
4    MILBANK, TWEED, HADLEY & McCLOY LLP
5        Attorneys for the Defendants
6        601 South Figueroa Street
7        Los Angeles, California 90017
8    BY: JERRY L. MARKS, ESQ.
9        DELILAH VINZON, ESQ.
10
11   KOREAN INTERPRETER:
12       JULIE WAGNER
13
14   ALSO PRESENT:
15       SAMUEL S. OH, ESQ.
16
17   VIDEOGRAPHER:
18       MATTHEW SMITH
19
20
21
22
23
24
25

TSG Reporting – Worldwide    (877) 702-9580

## Page 5

1                BRYAN LEE
2        THE VIDEOGRAPHER:  This begins tape labeled
3    Number 1 videotaped deposition of Bryan Lee In
4    Re:  TriGem America Corporation, Debtor, in the
5    matter of Keith F. Cooper versus Credit Suisse
6    International, et cetera, in the United States
7    Bankruptcy Court, Central District of
8    California, Case No. 8:05-13972 TA.  This
9    deposition is being held at 601 South Figueroa
10   Street on the 30th floor in Los Angeles,
11   California, on January 22nd, 2009, at
12   approximately 10:26 a.m.
13       My name is Matthew Smith from TSG
14   Reporting, Incorporated, and I am the legal
15   video specialist.  The court reporter is Susan
16   Sullivan in association with TSG Reporting.
17       Will counsel please introduce yourselves
18   for the record.
19       MR. MARKS:  Jerry Marks, Milbank Tweed,
20   with my colleague, Delilah Vinzon.
21       MR. SCHATZOW:  Michael Schatzow, Venable
22   LLP, on of behalf of Plaintiff, Keith Cooper, in
23   his capacity as liquidating trustee.  With me is
24   a consultant, Sam Oh, Esq., and my colleague
25   Jon-Jamison Hill also with Venable, LLP.

TSG Reporting – Worldwide    (877) 702-9580

EXHIBIT 3
Page 10

Page 34

BRYAN LEE

1    is the $15.6 million. You are referring to the money
2    that was wired from TGI to TGA that we discussed a
3    few moments ago?
4    A  Yes.
5    Q  And were you informing Ms. Park that the
6    $15.85 million initial exchange payment must be wired
7    to the bondholders by the next day, March 24th, 2005?
8    A  Yes.
9    MR. MARKS: Why don't we take a break.
10    THE VIDEOGRAPHER: This concludes Tape
11    Number 1 in the videotaped deposition of Bryan
12    Lee. The time is 11:57 a.m. We are now off the
13    record.
14    (Recess)
15    THE VIDEOGRAPHER: This begins Tape Number
16    2 in the videotaped deposition of Bryan Lee.
17    The time is 12:17 p.m. We are now on the
18    record.
19    BY MR. MARKS:
20    Q  If we continue looking at Exhibit 12, Mr.
21    Lee, there's a reference, you make a reference to CCS
22    having remitted $2 million today to TGA. Do you see
23    that?
24    A  Yes. Yes.

TSG Reporting - Worldwide    (877) 702-9580

Page 35

BRYAN LEE

1    Q  Just so I have the facts straight, is it
2    correct that on March 23rd, 2005, CCS wired $2
3    million to TGA?
4    A  Yes.
5    Q  Were you the one who asked, requested that
6    CCS provide that money to TGA?
7    A  I don't have a clear recollection whether
8    under -- whether I requested it under Mr. Yoon's
9    instruction or whether Mr. Yoon personally
10    instructed.
11    Q  Was it your understanding at the time that
12    you wrote this E-mail that the $2 million received
13    from CCS was to be combined with the $15.6 million
14    received from TGI to make the initial exchange
15    payments under the swap agreements?
16    A  Yes.
17    Q  And is that what you are instructing
18    Ms. Park to do in this March 23rd, 2005, E-mail?
19    A  Yes.
20    Q  If you look at the last line of your
21    E-mail -- excuse me, the last sentence of your E-mail
22    it says in the translated version, "And when you
23    receive $2.25 million scheduled remittance from the
24    head office on March 24 (Korea time), turn around and

TSG Reporting - Worldwide    (877) 702-9580

Page 36

BRYAN LEE

1    remit $2 million of this to CCS."
2    Do you see that?
3    A  It doesn't say 2.2 million, it says 2.25
4    million upon receipt, wire 2 million of that.
5    Q  Was it your understanding at the time that
6    you wrote this E-mail on March 23rd, 2005, that TGI
7    would provide $2.25 million to TGA for purposes of
8    remitting $2 million of that to CCS?
9    A  I understood that $2.25 million was going
10    to be received from TGI and of that, $2 million was
11    to be wired to CCS.
12    Q  At some point after you sent this E-mail on
13    March 23rd, 2005, did TGI in fact provide $2.25
14    million to TGA for purposes of remitting $2 million
15    of that to CCS?
16    A  To my recollection, while I was at TGA, TGI
17    did not send the $2.25 million. I don't have an
18    exact recollection.
19    Q  Did TGA at any point after this March 23rd,
20    2005, E-mail remit $2 million to CCS?
21    A  I can't be sure, but I understand that it
22    was sent.
23    Q  Do you have a specific recollection that
24    TGA at some point after this March 23rd, 2004, E-mail

TSG Reporting - Worldwide    (877) 702-9580

Page 37

BRYAN LEE

1    did in fact remit $2 million to CCS?
2    A  I don't have a specific recollection.
3    Q  I would like to show you what's been
4    previously marked as Exhibit 14. It is titled "Wire
5    Instruction for Swap Agreement," Bates Number
6    TGA0687825.
7    Mr. Lee, did you prepare the documents
8    marked as Exhibit 14?
9    A  Yes.
10    Q  And is that your handwriting next to the
11    wire instructions for each of the entities?
12    A  No.
13    Q  Do you know whose handwriting it is?
14    A  I don't know.
15    Q  Where did you get the information that you
16    used to prepare Exhibit 14?
17    A  Someone provided this information for me to
18    prepare this but I don't remember who I received this
19    from.
20    Q  Did you use the information in Exhibit 14
21    to make the wire transfers to each of the entities
22    listed here in the amounts listed here?
23    A  I remember that I provided this to Susan
24    Park and to have her do the wire transfer.

TSG Reporting - Worldwide    (877) 702-9580

EXHIBIT 3
Page 11

Page 118

BRYAN LEE

1
2       Q   As of March of 2005 were Gateway and HP
3   still customers of TGA?
4       A   To my recollection, they were customers.
5       Q   And were there still -- had HP or Gateway
6   indicated in any way whether they were going to
7   continue as customers?
8           MR. MARKS: Object as to form, as to time.
9       Q   As of March of 2005.
10      A   I knew that HP and Gateway no longer
11  conducted business with TGA. However, as to when
12  they stopped doing business, I don't know for sure.
13      Q   Was there any connection between HP and
14  Gateway no longer doing business with TGA and the
15  termination of the short-term borrowing facility
16  described in Note 5?
17          MR. MARKS: Object as to form and leading.
18      A   Yes, yes there is.
19      Q   What if any connection was there?
20      A   Because the borrowing was based on the AR
21  from Gateway and HP but with no sales, there was no
22  AR. I don't recall exactly whether there was no sale
23  or -- okay. It is not that I don't remember, but
24  it, if there's no sale it affects and if the amounts
25  significantly decreases it affects the volume.

TSG Reporting - Worldwide    (877) 702-9580

Page 119

BRYAN LEE

1
2           MR. SCHATZOW: I will have this marked as
3   the next exhibit number.
4           (Lee Exhibit 40, a document bearing Bates
5           Nos. T00000026 to TO000000026_004, marked
6           for identification, as of this date.)
7       Q   Mr. Lee --
8           MR. MARKS: Has this been produced in
9   litigation?
10          MR. SCHATZOW: It has a Bates number on it
11  but I can't answer that question, I don't know.
12      Q   Mr. Lee, I've handed you what's been marked
13  as Exhibit Number -- what are we up to?
14          THE REPORTER: 40.
15      Q   Exhibit 40, which is a letter dated March
16  11th, 2005, entitled "Termination Notice Letter" from
17  TriGem America Corporation to Lawrence Ridgeway, Vice
18  President, GE Capital commerce Financial, Inc.
19          Have you ever seen this letter before?
20      A   Yes.
21      Q   And after, as the letter says, pursuant to
22  Section 1.3 of the Credit Agreement and not later
23  than March 14th, 2005, that the borrowers will
24  voluntarily prepay or cause to have prepaid to agent
25  all obligations.

TSG Reporting - Worldwide    (877) 702-9580

Page 120

BRYAN LEE

1
2       After March 14th, 2005, was the lending
3   agreement with GE any longer in effect?
4           MR. MARKS: Objection; lacks foundation.
5           THE INTERPRETER: Excuse me. May the
6   interpreter ask where it says in that paragraph?
7           MR. SCHATZOW: Yes.
8       Q   If you will direct your attention to the
9   sixth line of the letter there's a sentence that
10  begins "Pursuant to Section 1.3 of the Credit
11  Agreement."
12          MR. MARKS: Objection. It lacks foundation
13  as to this witness.
14      A   I don't know exactly when but, anyway, it
15  was terminated.
16      Q   Let me show you next, if we could have this
17  marked as Exhibit 41.
18          (Lee Exhibit 41, a document bearing Bates
19          No. TGA0687822, marked for identification,
20          as of this date.)
21      Q   Mr. Lee, if you would take a look at
22  Exhibit 41, please tell us what that is.
23      A   This is the general ledger. It shows the
24  money that came in and money that went out.
25      Q   I would like to direct your attention to

TSG Reporting - Worldwide    (877) 702-9580

Page 121

BRYAN LEE

1
2   the first entry on the page, $2 million. What does
3   that indicate to you?
4       A   It indicates that CCS sent 2 million to
5   TGA.
6       Q   Let me direct your attention to the entry
7   that reads $1,300,000. What does that indicate to
8   you?
9       A   It indicates that CCS send 1.3 million to
10  TGA.
11      Q   And next look at the entry for $15,600,000.
12  What does that indicate to you?
13      A   It show that pursuant to APA, TGI sent 15.6
14  million to TGA.
15      Q   Is APA the agreement with the Internal
16  Revenue Service that you testified about earlier?
17      A   Yes.
18      Q   Let's take a look at what was previously
19  marked as Exhibit 17. Do you have Exhibit 17 in
20  front of you, sir?
21      A   Yes.
22      Q   Does this exhibit show the same $3.3
23  million coming from CCS that was described on
24  Exhibit, the journal entry that we just looked at
25  which is Exhibit 41?

TSG Reporting - Worldwide    (877) 702-9580

EXHIBIT 3
Page 12

Page 122

BRYAN LEE

1
2  A  Yes.
3     MR. MARKS: Object as to form.
4  Q  If you could also put Exhibit 13 in front
5  of you.
6     MR. MARKS: Hold on. I just want to make
7  sure.
8  Q  Does Exhibit 13 also reflect the deposit
9  into a TGA account of $3.3 million from CCS?
10  A  Yes, that's my understanding.
11  Q  Would you mark this as 42, please, and
12  staple it.
13     (Lee Exhibit 42, a document bearing Bates
14     Nos. T00000374 to T00000374_0004, marked
15     for identification, as of this date.)
16     MR. MARKS: Is that our stapler? Can I
17  borrow it? Just toss it.
18     MR. SCHATZOW: I will give it to him.
19  Q  Now Exhibit 42, if you look at the very
20  last page, can you tell us what that is?
21  A  It indicates that TGA paid back 1 million
22  to CCS.
23  Q  Is that your signature that appears on the
24  very bottom of the page under "Audit by Finance"?
25  A  Yes.

TSG Reporting - Worldwide    (877) 702-9580

Page 123

BRYAN LEE

1
2  Q  If you look at the page right before that,
3  what is that document?
4  A  It is a wire transfer application form.
5  Q  And does that relate to the same million
6  dollars in the payment request that we just looked
7  at?
8  A  Yes.
9  Q  Is that your signature on the bottom?
10  A  Yes.
11  Q  Okay. And let's go to the next page moving
12  towards the front of the document.
13     Tell us what that is.
14  A  It indicates TGA's payback to CCS for 2.3
15  million.
16  Q  Is that your signature next to the word
17  "Approved" at the bottom?
18  A  I think so.
19  Q  And look at the very first page of the
20  document, and what is this?
21  A  It is a wire application form for TGA to
22  wire 2.3 million to CCS.
23  Q  Is that your signature that appears on the
24  bottom?
25  A  I think so.

TSG Reporting - Worldwide    (877) 702-9580

Page 124

BRYAN LEE

1
2  Q  And then we're just about at the end here,
3  sir.
4     Can I have this marked as the next exhibit.
5     (Lee Exhibit 43, a document bearing Bates
6     Nos. PL00000214 to PL00000224, marked for
7     identification, as of this date.)
8  Q  Exhibit 43 is a series of documents. The
9  first one is Bates PL and ends with 214 with quite a
10  few zeros in the middle and the last one is 224.
11  Some of these documents have already been marked as
12  an exhibit but the entire set has not.
13     I just want to go with you page by page,
14  Mr. Lee, and ask you who prepared the documents, so
15  let's start with the first one with a page number
16  214. Who prepared this?
17  A  I did.
18  Q  I want to direct your attention to the
19  page, the next page which says 215 on it. Who
20  prepared this document?
21  A  I think I prepared it.
22  Q  I would like to turn your attention to the
23  next page, 216. Who prepared this?
24  A  I did.
25  Q  And the next page, 217, who prepared this?

TSG Reporting - Worldwide    (877) 702-9580

Page 125

BRYAN LEE

1
2  A  I did.
3  Q  Now the next page, 218, who prepared this?
4  A  I'm not sure.
5  Q  Who prepared Page 219?
6  A  I'm not sure.
7  Q  The next page, 220, who prepared that?
8  A  I did.
9  Q  And the next page, 221, who prepared that?
10  A  I did.
11  Q  And the next page, 222, who prepared that?
12  A  I did.
13  Q  And the next page, 223.
14  A  I'm not sure.
15  Q  And the next page, 224.
16  A  I'm not sure.
17  Q  Okay. If you will just bear with me for
18  just a moment.
19     That's all I have for you. Thank you very
20  much, sir.
21     THE VIDEOGRAPHER: Anything else on the
22  record?
23     MR. MARKS: Yes. I only have a couple of
24  followup questions. I will make it as brief as
25  possible.

TSG Reporting - Worldwide    (877) 702-9580

EXHIBIT 3
Page 13

# EXHIBIT 4

Message                                                                          Page 1/2

Yoon, Bo-young (Brian Yoon/TGA)

From:           Bryan Lee
Date Sent:      Wednesday, March 23, 205 7:32 PM
To:             Susan Park
Cc:             Brian Yoon; Moon Chul Hong : Gina Lee
Subject:        Cash flow for CSFB and CCS

Susan,

Once again, the following is flow of funds from TGA position.

$$\begin{array}{c} \mathbf{\$3.30M\ from\ CCS} \\ \downarrow \\ \mathbf{\$1.05M\ to\ TGI} \longleftarrow \mathbf{TGA\ Total\ \$18.90M} \longrightarrow \mathbf{\$17.85\ M\ to\ CSFB} \\ \uparrow \\ \mathbf{\$15.60M\ from\ TGI} \end{array}$$

(We are) planning to repay CCS the $3.3M (we) borrowed by Mid April by using the collection from Gateway.
In Mid April the head office will send $2.25 to TGA, this is the difference of what was sent from the head office and TGA remittance to CSFB. However, there may be an alteration since there is no difference between receiving $2.25 and paying back the head office DA and not receive funds and not paying the DA Payment.

Please consider it.

Bryan Lee


From:           Im, Hyung-jae [mailto:Ihj@trigem-usa.com]
Sent:           Wednesday, March 23, 2005 5:43 P.M.
To:             TGA-Moon, Kwan-sik; Bryan Lee; Susan Park, Han, Jong-ju; Nah, Kyung-joon
Cc:             Park, Han-soo; Ham, Yoon-sub (YS Ham/TGI); Park, Ki-hong; Hong, Chang-hoon;
                Shin, Seung-hak
Subject:        CCS Fund Utilization

Greetings, this is Im, Hyung-jae from the Fund Planning Department.

Please proceed with the flow of funds today as follows.

$5M held by CCS  ⟶  $1.7M Head Office Remittance (Materials Payment, Relating to Settlement)
↓
TGA Remittance $3.3M  ⟶  CSFB Security $2.2M

EXHIBIT
L7

PL00000193

EXHIBIT 4
Page 14
065

Message                                                    Page 2/2

$ 1.1M Head Office Remittance

As for the funds TGA got from the CCS loan, it can be repaid with the money received at the TGA by Mid
April. Please let me know if there's a change or when other matters come up.  From Im, Hyung-jae

PL00000194

EXHIBIT 4
Page 15        065

# EXHIBIT 5

Case 8:07-ap-01140-TA    Doc 148-44    Filed 12/07/09    Entered 12/08/09 00:10:37
Desc Exhibit DDD    Page 2 of 2

Trigem America Corporation (NEW)

GENERAL JOURNAL

| SOURCE JOURNAL | POSTING DATE | JOURNAL COMMENT | REVERSING DATE | |
|---|---|---|---|---|
| CR-0150 | 03/23/05 | From CCS - Loan | | |

| ACCOUNT NO | DESCRIPTION/COMMENT | DEBIT | CREDIT |
|---|---|---|---|
| 1015-10-000 | US Bank-Funding # 153454681575 From CCS | 2,000,000.00 | |
| 2014-10-000 | Suspense Received-Others From CCS | | 2,000,000.00 |
| | JOURNAL CR-0150 TOTALS: | 2,000,000.00 | 2,000,000.00 |

| CR-0151 | 03/24/05 | From CCS - Loan | | |
|---|---|---|---|---|

| ACCOUNT NO | DESCRIPTION/COMMENT | DEBIT | CREDIT |
|---|---|---|---|
| 1015-10-000 | US Bank-Funding # 153454681575 From CCS | 1,300,000.00 | |
| 2014-10-000 | Suspense Received-Others From CCS | | 1,300,000.00 |
| 1015-10-000 | US Bank-Funding # 153454681575 From TGI - APA | 15,600,000.00 | |
| 1218-10-000 | Due from Affiliated Company From TGI - APA | | 15,600,000.00 |
| 1101-10-000 | Investment-Current Stark Asia:9.1M of bonds | 6,825,000.00 | |
| 1101-10-000 | Investment-Current Centar Investments:4.4Mof bond | 3,300,000.00 | |
| 1101-10-000 | Investment-Current Credit Suisse:7.3M of bonds | 5,475,000.00 | |
| 1101-10-000 | Investment-Current CQS Mgmnt:3M of bonds | 2,250,000.00 | |
| 1015-10-000 | US Bank-Funding # 153454681575 For investments | | 17,850,000.00 |
| | JOURNAL CR-0151 TOTALS: | 34,750,000.00 | 34,750,000.00 |
| | SOURCE CR TOTALS: | 36,750,000.00 | 36,750,000.00 |
| | REPORT TOTALS: | 36,750,000.00 | 36,750,000.00 |

TGA0687822

EXHIBIT 5
Page 16          067

# EXHIBIT 6

# HANMI BANK

## WIRE TRANSFER APPLICATION AND INSTRUCTIONS

| | |
|---|---|
| Remittance Amount 송금액 | ₩ 2,300,000.XX |
| Wire Fee 수수료 | |
| Total Received | ₩ 2,300,000.XX |

| Branch/Dept. No. | | Date Received | Time Received | Date Sent 5/13/05 |
|---|---|---|---|---|
| Method of Payment | | | Branch/Dept. Person Contacted | |

| PAYING BANK 지 불은행 | ABA Reference | 122039399 |
|---|---|---|
| | Name | HANMI BANK |
| | Address | |

| PAYEE 수취인 | Name | CCS | Account No. | 007404360 |
|---|---|---|---|---|
| | Address | 80 ICON, FOOTHILL RANCH CA 92610 | | |
| | Instructions | | Telephone No. | |

| REMITTER 송금인 | Name | TRIGEM AMERICA | Account No. | 500027479 |
|---|---|---|---|---|
| | Address | | TIN | |
| | | | ID # | |
| | Instructions | | Telephone No. | |

**For Completion by Branch Department**

| Accepted by (Signature) | Approved by (Signature) | Funds Transfer Agreement on File   YES ☐   NO ☐ |
|---|---|---|
| | | Customer Contact |

**For Completion by Central Wire Dept**

| Prepared/Input made by | Verified by | Approved by |
|---|---|---|

## AGREEMENT

I hereby appoint HANMI BANK my agent for the purpose of effecting a payment per the details given on the face of this order. When I direct the funds received from me to be remitted in foreign values, the Bank may, in its discretion, convert said funds received from me into said foreign values at the Bank's selling rate on the day such funds are received, unless I direct the Bank in writing to charge an account maintained by me in the foreign funds to be remitted for the amount of the remittance.

The Bank's statement in writing that it has made such a conversion referred to above shall be conclusive, and in such a case, the order in this instrument shall be constructed as an immediate purchase by me of the amount of said foreign funds at my sole risk.

The said remittance may be made by the Bank through its customary channels, and the Bank is absolved from any and all liabilities for loss arising from any cause beyond its control, including, but not limited to the following:

(a) The act, failure or neglect of any agent or correspondent selected by the Bank for the remittance thereof;
(b) Any delay, error, omission or default of any mail, telegraph, cable or wireless operator;
(c) The acts or edicts of any government or governmental agency or other group or groups exercising governmental powers, whether de jure or de facto.

When a Request contains a name and account number, payment may be made by Bank and/or by other banks to which a Request is forwarded based solely on the account number even if the account number identifies a beneficiary different from the beneficiary named by Customer. Customer acknowledges that Banks and other banks to which a Request is forwarded may rely on any bank identification number supplied by Customer as a means to identify any other bank, even if the identification number is different than the bank named by Customer.

Customer acknowledges that payment orders that are received by us and may be executed by us using Federal Reserve Communication System (Fedwire), and will be subject to Regulation and its accompanying Subpart B.

This Bank shall be under no obligation to obtain the receipt of the payee. The Bank on request, will use its best effort to trace payment. No request for tracing shall be made prior to three weeks from date of this order.

The Bank shall not be under no liability to make any refund prior to receipt by it of continuation of order of cancellation from the correspondent, agent or subagent engaged by the Bank to effect the transmittal and in the case of funds already converted, only on the basis of the Bank's buying rate on the day refund is made less the expenses of the Bank, its correspondents and agents. The Bank may discharge said liability, if any, by assigning to me its interest in any credit which may be established as a result of this order with its correspondent, agent or subagent.

x _Byun Lee_    DATE: 5/13/05

X42

T00000374

EXHIBIT 6
Page 17

 **TriGem**
America Corporation

| Req Date: | 05/13/04 |
|---|---|
| Due Date: | Today |
| Requested by | Susan Park |

# PAYMENT REQUEST

Payable to _____ CCS _____  Amount $ 2,300,000

Purpose   Reim of the balance 3.3M borrowing in March05.

Wire to CCS Hanmi bank acct.

## JOURNAL ENTRIES

Date _____                                JE No. _____

| Acct Code | Descriptions | Amounts | |
|---|---|---|---|
| | | Debit | Credit |
| 2014-10-000 | Suspense received - Others | 2,300,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Requester:   _Susan Park_

Approved:   _Byun Lee_

Audit by Finance:  _____

T00000374_0002

EXHIBIT 6
Page 18

# 🦅 HANMI BANK

## WIRE TRANSFER APPLICATION AND INSTRUCTIONS

| Remittance Amount 송금액 | $1,000,000.ᵡᵡ |
|---|---|
| Wire Fee 수수료 | |
| Total Received | $1,000,000.ᵡᵡ |

| Branch/Dept. No. | | Date Received | | Time Received | | Date Sent 4/15/05 |
|---|---|---|---|---|---|---|
| Method of Payment | | | | Branch/Dept. Person Contacted | | |

| PAYING BANK 지불은행 | ABA Reference | 122039399 |
|---|---|---|
| | Name | HANMI BANK |
| | Address | |

| PAYEE 수취인 | Name | CCS | Account No. 007404360 |
|---|---|---|---|
| | Address | 80 ICON, FOOTHILL RANCH CA 92610 | |
| | Instructions | | Telephone No. |

| REMITTER 송금인 | Name | TRIGEM AMERICA | Account No. 500027479 |
|---|---|---|---|
| | Address | 80 ICON, FOOTHILL RANCH CA 92610 | TIN ID# |
| | Instructions | | Telephone No. |

**For Completion by Branch Department**

| Accepted by (Signature) | Approved by (Signature) | Funds Transfer Agreement on File    YES ☐    NO ☐ |
|---|---|---|
| | | Customer Contact |

**For Completion by Central Wire Dept.**

| Prepared/Input made by | Verified by | Approved by |
|---|---|---|

## AGREEMENT

I hereby appoint HANMI BANK my agent for the purpose of effecting a payment per the details given on the face of this order. When I direct the funds received from me to be remitted in foreign values, the Bank may, in its discretion, convert said funds received from me into said foreign values at the Bank's selling rate on the day such funds are received, unless I direct the Bank in writing to charge an account maintained by me in the foreign funds to be remitted for the amount of the remittance.

The Bank's statement in writing that it has made such a conversion referred to above shall be conclusive, and in such a case, the order in this instrument shall be constructed as an immediate purchase by me of the amount of said foreign funds at my sole risk.

The said remittance may be made by the Bank through its customary channels, and the Bank is absolved from any and all liabilities for loss arising from any cause beyond its control, including, but not limited to the following:

(a) The act, failure or neglect of any agent or correspondent selected by the Bank for the remittance thereof;
(b) Any delay, error, omission or default of any mail, telegraph, cable or wireless operator;
(c) The acts or edicts of any government or governmental agency or other group or groups exercising governmental powers, whether de jure or de facto.

When a Request contains a name and account number, payment may be made by Bank and/or by other banks to which a Request is forwarded based solely on the account number even if the account number identifies a beneficiary different from the beneficiary named by Customer. Customer acknowledges that Banks and other banks to which a Request is forwarded may rely on any bank identification number supplied by Customer as a means to identify any other bank, even if the identification number is different than the bank named by Customer.

* Customer acknowledges that payment orders may be received by us and may be executed by us using Federal Reserve Communication System (Fedwire), and will be subject to Regulation and its accompanying Subpart B.

This Bank shall be under no obligation to obtain the receipt of the payee. The Bank on request, will use its best effort to trace payment. No request for tracing shall be made prior to three weeks from date of this order.

The Bank shall not be under no liability to make any refund prior to receipt by it of continuation of order of cancellation from the correspondent, agent or subagent engaged by the Bank to effect the transmittal and in the case of funds already converted, only on the basis of the Bank's buying rate on the day refund is made less the expenses of the Bank, its correspondents and agents. The Bank may discharge said liability, if any, by assigning to me its interest in any credit which may be established as a result of this order with its correspondent, agent or subagent.

X _Byun Lee_    DATE: 4/15/05

T00000374_0003

EXHIBIT 6
Page 19

 **TriGem**
America Corporation

APR 1 5 RECD

Req Date:     04/15/05
Due Date:     Today
Requested
by     Susan Park

# PAYMENT REQUEST

Payable to          CCS          Amount $ *1000,000*

Purpose     Pay back fund borrowed on 3/24/05

## JOURNAL ENTRIES

Date _____          JE No. _____

| Acct Code | Descriptions | Amounts | |
|---|---|---|---|
| | | Debit | Credit |
| 2014-10-000 | Suspense received - Ohters | 1,000,000.00 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Requester: _____

Approved: _____

Audit by Finance: _____

T00000374_0004

EXHIBIT 6
Page 20

| In re: In re TRIGEM AMERICA CORPORATION | | CHAPTER 11 |
| *Cooper v. Credit Suisse International, et al* | Debtor(s). | CASE NUMBER:  8:05-13972-TA<br>ADV. NUMBER:  8:07-01140-TA |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described **DECLARATION OF MICHAEL SCHATZOW IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT FOLLOWING STATEMENT OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. July 28, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Jennifer Levin                  jlevin@venable.com
- Delilah Vinzon                 dvinzon@milbank.com
- Aluyah I. Imoisili            aimoisili@milbank.com
- United States Trustee (SA)    ustpregion16.sa.ect@usdoj.gov
- Christopher T. Williams      ctwilliams@venable.com; jcontreras@venable.com

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On July 28, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____  I  served  the  following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/28/10 | Michele Baggett | /s/ Michele Baggett |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

| In re: In re TRIGEM AMERICA CORPORATION | | CHAPTER 11 |
|---|---|---|
| *Cooper v. Credit Suisse International, et al* | Debtor(s). | CASE NUMBER:  8:05-13972-TA<br>ADV. NUMBER:  8:07-01140-TA |

## OVERNIGHT MAIL

Lindsee P. Granfield, Esq.
Lisa M. Schweitzer, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON
One Liberty Plaza
New York, NY  10006

Jerry L. Marks, Esq.
Fred Neufeld, Esq.
MILBANK TWEED HADLEY & McCLOY
601 South Figueroa 30th Floor
Los Angeles, CA  90017-5735

Judge Theodor C. Albert
United States Bankruptcy Court
411 W. Fourth Street
Santa Ana, CA  92701

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                               **F 9013-3.1**